IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JOSEPH FARINA**                                                                            **PLAINTIFF**

**VS.**                                      **CAUSE NO.** 2:23-cv-177-HSO-BWR

**CULLMAN PRIMARY CARE, P.C.**                                   **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

COMES NOW, the Plaintiff, Joseph Farina, by and through counsel, and files this his Complaint for Breach of Contract against Defendant, Cullman Primary Care, P.C., and for his cause of action would show unto the Court the following, to-wit:

## PARTIES

1. The Plaintiff, Joseph Farina (hereinafter "Plaintiff" or "Farina"), is an adult resident citizen of Forrest County, Mississippi where he resides at 3501 Mamie Street, Hattiesburg, Mississippi 39402.

2. Defendant Cullman Primary Care, P.C. (hereinafter "Defendant" or "CPC") is a Domestic Professional Company licensed to do business in the State of Alabama, and at all times herein mentioned and prior thereto, did, in fact, conduct business within the State of Alabama. Defendant CPC may be served with process of this Court by serving a copy of the Complaint upon its registered agent for process, Christopher Coccia, at 503 Clark Street NE, Cullman, Alabama 35055.

1

## JURISDICTION AND VENUE

3.  Plaintiff would show that this Court has subject matter jurisdiction of this action in that the parties are diverse, the amount in controversy is in excess of the jurisdictional amount of this Court, no other Court is vested with exclusive subject matter jurisdiction of this action under the Constitution and Laws of the State of Mississippi, and each of the claims of Plaintiff set forth herein fall within the State of Mississippi's applicable Statute of Limitations.

## FACTS

4.  At all relevant periods within this complaint, Plaintiff Farina was a neurologist, licensed to practice medicine in the State of Mississippi, State of Alabama and State of Florida.

5.  Since 1988, he has maintained a residence in the State of Mississippi and an office to the present time in Hattiesburg, Mississippi and McComb, Mississippi.

6.  Plaintiff has also maintained a practice in the State of Mississippi since and has practiced in other states on a part time basis, coming back to his permanent Mississippi residence and office when he is not working out of state.

7.  On or about March 1, 2021, Plaintiff entered into a contract with Cullman Primary Care, P.C. as a neurologist with a salary of $400,000.00 per year. See Exhibit "A" – Farina Contract.

8.  Plaintiff's salary was to be paid on the final day of each month, at approximately $33,333.00 each month.

9.  Plaintiff's employment contract with Defendant was signed in Mississippi and Plaintiff's salary was spent primarily in Mississippi; and Plaintiff maintained Mississippi Bank Credit cards.

10.  Plaintiff worked four days at first and then to three days per week in Alabama;

and Plaintiff commuted each week back and forth from Mississippi.

11. At no time did Plaintiff maintain a residence in Alabama or anywhere other than Mississippi. In order to work, Plaintiff stayed in hotels temporarily in Alabama and in other states; and that he maintained a cell phone with a Mississippi number and he maintained a Mississippi Drivers License.

12. On or about March 2022, the CEO of CPC, John Reynolds (hereinafter "CEO Reynolds") announced that the hospital would be hiring a second neurologist. This hiring was unnecessary, as there was no need for a second neurologist at CPC, nor was there enough demand for the services of a second neurologist.

13. Because of this, Plaintiff tendered his resignation due to lack of demand soon after the new neurologist was hired.

14. Upon tendering his resignation from CPC, Plaintiff advised CEO Reynolds that he had been offered a new position at a private practice in Dothan, Alabama, with the same salary and number of working hours as the position he was leaving at CPC.

15. In response, CEO Reynolds advised Plaintiff that if Plaintiff agreed to stay at CPC, his salary and payment schedule would remain the same and that he would only have to work on Tuesdays, Wednesdays, and Thursdays, a decrease from Plaintiff's current contractual obligations. At this time, CEO Reynolds additionally assured Plaintiff that Plaintiff had "a job for life" at CPC.

16. As a result of this conversation and CEO Reynolds' representations, Plaintiff agreed to remain at CPC in his capacity as a neurologist; and that he declined the job in Dothan, Alabama.

17. In late November or December of 2022, CEO Reynolds asked Plaintiff if Plaintiff

would assist CPC in starting a pain management clinic, due to Plaintiff's past experience working in pain management. CEO Reynolds told Plaintiff that Plaintiff would begin working half of his time as a neurologist and the other half of his time at the pain management clinic. Plaintiff agreed to help with the clinic.

18. As the pain management clinic began operation, Plaintiff was forced to move out of his office in the neurology building and into a new office in the pain management clinic. He began to notice many operational flaws, most significantly the inability to authorize tests in a timely manner for his neurology patients due to his shortened hours in the neurology department.

19. The following year, on or about January 31, 2023, CEO Reynolds called a private meeting and informed staff, including Plaintiff, that the new pain management department would be closing, effective immediately, due to lack of productivity.

20. At the same meeting, CEO Reynolds admitted that CPC was in serious financial trouble and had been for approximately six months.

21. Prior to this meeting, Plaintiff had begun noticing tardy and unpaid paychecks. The first such instance occurred in November 2022, when Plaintiff's October, 2022 paycheck arrived tardy by ten days, on or about November 10, rather than the last day of October when it was due.

22. The following month, Plaintiff's check was so tardy that CEO Reynolds issued a written statement, agreeing to compensate Plaintiff with a $1000.00 bonus. Ultimately, the November check did not arrive until on or about January 3, 2023. Plaintiff has never received the $1000.00 bonus.

23. After the tardy November paycheck, Plaintiff has not received any compensation for his work at all, despite a representation by CEO Reynolds that the wages would be paid per

CPC's contractual obligations to Plaintiff. Plaintiff's unpaid wages include monthly paychecks from December 2022, January 2023, February 2023, and March 2023, along with the $1000.00 that CEO Reynolds promised Plaintiff in writing.

24. Additionally, Plaintiff did not receive contributions to his 401k for the months of November 2022, December 2022, January 2023, February 2023, and March 2023.

25. Plaintiff's employment with CPC ended at the end of the month of March 2023, despite CEO Reynolds representation that Plaintiff had a "job for life" at CPC. Plaintiff had agreed to work as a consultant for Defendant from his home in Mississippi until the end of March 2023; and he did his work by telephone from Mississippi.

26. As a result of the unpaid wages from CPC, Plaintiff is not only owed money, but also lost the job he would have taken due to the false representation of John Reynolds, he had agreed to remain at CPC on the agreement that his salary would remain the same, his work week would be shortened, and the understanding that he would be guaranteed steady employment until his retirement according to John Reynolds.

27. The contract was signed in Mississippi, Plaintiff consistently maintained residence in Mississippi; that he was a resident of Mississippi at the time of his transition, and that he maintained a part-time medical practice in Mississippi during the time of his employment in Alabama and saw patients in Mississippi.

28. The breach of contract by Defendant CPC resulted in significant financial loss for the Plaintiff, including the employment position he lost.

## COUNT I
## BREACH OF CONTRACT

29. The allegations set forth in paragraphs one (1) through twenty-five (28) are re-

alleged and incorporated by reference as if fully set forth.

30. Plaintiff Farina and Defendant CPC entered into a written agreement on or about March 1, 2021, employing Plaintiff as a neurologist at a salary of $400,000.00 per year to be paid in monthly installments on the last day of every month.

31. At all times relevant hereto, this contract for employment constituted a valid and enforceable contract between Plaintiff and Defendant while Plaintiff was an adult resident citizen of Mississippi; that he maintained a part-time medical practice in Mississippi which employed by the Defendant; that he worked for two months of his employment by telephone from Mississippi as a consultant; that he maintained a Mississippi Drivers License and his car was registered in Mississippi and had a Mississippi tag; that his cell phone had a Mississippi number; that he maintained two houses and two medical offices in Mississippi while employed in Alabama; that he filed a Mississippi State tax return while employed in Alabama; that the cause of action of breach of contract occurred in Mississippi as he was not paid for the month of February and March 2023 while he worked as a consultant for Defendant from Mississippi by telephone.

32. Plaintiff performed all of his obligations under the contract between the parties in Alabama and Mississippi; and that the last two months of his job, he was at home in Mississippi by telephone.

33. Defendant CPC breached the contract by failing to compensate Plaintiff for his work in the months of December 2022, January 2023, February 2023, and March 2023, while he was working from Mississippi.

34. Defendant further breached the contract by failing to make contributions to Plaintiff's 401k in the months of November 2022, December 2022, January 2023, February 2023, and March 2023.

35.  Additionally, Defendant failed to uphold a valid, written agreement for a bonus of $1000.00.

36.  As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be shown at trial of this matter.

## DAMAGES

37.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows.

38.  As a direct and proximate result of the foregoing causes of action, Plaintiff is entitled to compensatory damages for the job he lost, his loss of wages, plus interest, as well as attorneys fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Farina respectfully requests that upon a trial of these causes, judgment will be entered against Defendant CPC, for compensatory damages, attorneys fees, and other such equitable remedies and relief prayed for herein.

Plaintiff prays for such other and further relief as the Court deems proper.

Respectfully submitted on this the 14th day of November, 2023.

JOSEPH FARINA, PLAINTIFF

BY: _____
JAMES D. SHANNON
ATTORNEY FOR PLAINTIFF

**SHANNON LAW FIRM, PLLC**
James D. Shannon (MSB #6731)
100 West Gallatin Street
Hazlehurst, MS 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033